### BARNEY et al. v. PIKE.

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

1. PARTNERSHIP REALTY—CONVERSION INTO PERSONALTY—EXPRESS AGREEMENT —EFFECT.

Where a partnership is formed to purchase marsh lands, and reclaim and sell them, "and divide the profits and proceeds of the sales thereof," the partnership capital to be invested in such lands "to be reclaimed and sold and converted into money, and the proceeds therefrom and profits or losses" to be "divided among said partners in proportion to their several interests therein"—that is, in proportion to the capital contributed—it amounts to an express agreement that the realty shall be deemed and treated as personalty, so that the estate of a deceased partner therein passes under his will as personalty, and not as realty.

Submitted controversy between Laura A. Barney and others as plaintiffs and Lawrence Pike as defendant. Judgment for defendant.

The agreed statement of facts recites that: "Heretofore, and on or about the 1st day of August in the year 1867, Samuel N. Pike, Joseph Tilney, Samuel Craighead, and George W. Kidd entered into copartnership, the object of which was to purchase marsh lands in the state of New Jersey and elsewhere,

and reclaim and sell such lands for their joint account, and divide the profits and proceeds of the sales thereof under an oral partnership agreement, by the terms whereof the business of the said partnership was to be carried on in the name of the said Samuel N. Pike, and that the title to the lands purchased for the purposes of the said partnership should be taken in the name of the said Samuel N. Pike, and that the capital required for the business of the said partnership should be contributed in the following proportions, viz.: Samuel Craighead one-sixteenth ($1/16$) of the whole, Samuel N. Pike eight-sixteenths ($8/16$) of the residue, Joseph Tilney five-sixteenths ($5/16$) of the remainder, and George W. Kidd three-sixteenths ($3/16$) of the remainder; and that the capital thus contributed should be invested in the purchase of marsh lands to be reclaimed and sold and converted into money, and the proceeds therefrom and profits or losses should be divided among said partners in proportion to their several interests therein, such sales and distribution to be made as soon as the lands were reclaimed, or on the dissolution of the partnership. * * * That the said Samuel N. Pike was seised of the said lands in trust for the said partnership to carry out and prosecute the objects and purposes thereof, to wit, that said lands should be drained, reclaimed, and improved, and then sold and converted into money, and the proceeds of such sales divided among the partners according to their respective interests therein. On the 7th day of December, 1872, the said Samuel N. Pike held the legal title to two thousand seven hundred and seven and $528/1000$ (2,707.528) acres of said marsh lands situate in the counties of Hudson and Bergen, in the state of New Jersey, in trust for the purposes aforesaid. Thereafter, and on the said 7th day of December, 1872, the said Samuel N. Pike departed this life, holding the aforesaid copartnership lands herein referred to, and seised of the legal title thereof, but in trust for the purposes aforesaid." That he left a will, which was admitted to probate, by the terms of which he disposed of his property, real and personal, to his widow and children; and that "after the death of the said Samuel N. Pike his said partners took the exclusive possession, control, and management of the said lands and real estate and all the business connected therewith. They expended large sums of money upon said lands, cultivated a part of said lands, collected and received moneys on account of rents and sales of the products of the cultivation of said lands and sales of lands made during the lifetime of the said Samuel N. Pike, and applied the said rents and proceeds of said sales to the payment of fixed charges upon and the improvement of said lands." That George W. Kidd, one of the surviving partners, filed in the court of chancery in the state of New Jersey a bill of complaint in a suit wherein all the parties hereto appeared, and in the bill of complaint (which is inserted merely to indicate the issues raised) he alleged as follows: "That on or about the 1st day of August, in the year of our Lord 1867, your orator and Samuel N. Pike, Joseph Tilney, and Samuel Craighead entered into a joint enterprise or partnership for the purpose of acquiring, reclaiming, and selling for their joint account marsh lands in the state of New Jersey or elsewhere, and of dividing the proceeds and profits of said enterprise among themselves. And your orator further shows that it was agreed by the said partners that the business of said partnership should (as far as was possible) be conducted in the name of the said Samuel N. Pike, and that the conveyances of any lands to be purchased for the uses and purposes of said partnership should be taken and held by said Samuel N. Pike in his own name for said partnership; and it was also further agreed between the said partners that they should respectively contribute the capital necessary for the business of said partnership in the following proportions, viz., the said Samuel Craighead was to contribute one-sixteenth part of the whole, Samuel N. Pike was to contribute eight-sixteenths of the remaining, Joseph Tilney was to contribute five-sixteenths of the remainder, and your orator was to contribute three-sixteenths of the remainder; and also that they should bear the losses, if any, and divide the profits and proceeds to be derived from said business in the same proportions; and it was also further agreed between your orator and his said copartners that the lands so to be purchased and reclaimed should always be personal property, and should be sold and converted into money, and the proceeds thereof divided among the said partners, as fast as the same could be done to advantage, during the continuance of said partnership; and that upon the dissolution of said partnership by death of one of

the partners, or otherwise, the whole should be sold and converted into money, and the proceeds divided among the surviving partners and the legal representatives of the deceased partner or partners." That the answers of the surviving partners, the executors and trustees of the will, the widow and the two adult children of Samuel N. Pike (also inserted to indicate the issues presented in that suit), admit: "That at or about the time in said bill in that behalf stated the said complainant and Samuel N. Pike, together with these defendants Joseph Tilney and Samuel Craighead, entered into a joint enterprise or partnership of such nature, purpose, and object as in said bill set forth; that the terms and provisions, purpose and effect, of such partnership agreement or articles were as particularly specified in said bill. * * * And these defendants, while admitting the allegations of fact in said bill to be true, respectfully submit to the decision and decree of this honorable court the questions of law arising therefrom and thereupon as to the legal construction and effect of said will in respect to said lands under the laws of the state of New Jersey, and as to the devolution of the title to or seizure of said lands at the decease of said Samuel N. Pike, and whether the same are to be decreed real or personal estate, and also all other questions concerning or affecting the respective rights and interests of the parties named in the said bill in respect to the said partnership property." That the infant children of Samuel N. Pike filed the usual answers of infants, submitting their rights to the court. That upon the issues thus presented the decree of March 15, 1876, was made, and the court found and established, among other things, that the partnership agreement was made on or about August 1, 1867, between Pike, Tilney, Craighead, and Kidd, "the object of which was to purchase marsh lands in the state of New Jersey and elsewhere, and reclaim and sell such lands for their account, and divide the profits and proceeds of the sales thereof under a partnership agreement, by the terms whereof the business of the said partnership was to be carried on in the name of the said Samuel N. Pike, and that the title to the lands purchased for the purpose of the said partnership should be taken in the name of said Samuel N. Pike, and that the capital required for the business of the said partnership should be contributed" in the proportions specified, "and that the capital thus contributed should be invested in the purchase of marsh lands to be reclaimed and sold and converted into money, and the proceeds and profits and losses should be divided among said partners in proportion to their several interests therein; such sales and distribution to be made as soon as the lands were reclaimed or on the dissolution of partnership." "That the purposes of said copartnership cannot be successfully carried out, and its affairs wound up and settled advantageously, unless the surviving copartners are invested with the legal title to said lands, and permitted to maintain the present system of drainage, and manage and dispose of the said lands pursuant to the scheme of the venture under the agreement above set forth." That the decree adjudges, among other things: "That the said residue of said lands remaining in the said Samuel N. Pike at the time of his death * * * are and have been the capital assets and stock of the said partnership consisting of the complainant, Samuel N. Pike, Joseph Tilney, and Samuel Craighead. That the said Samuel N. Pike was seised of the said lands so conveyed to him in trust for said partnership, and at the time of his death he was seised of the residue of said lands still remaining and undisposed of, not in his own right, but in trust for said partnership, to carry out and prosecute the objects and purposes thereof, which were that said lands should be drained, reclaimed, and improved, and then sold, and converted into money, and the proceeds of such sales divided among the partners according to their respective interests therein. That the said partnership was dissolved by the death of the said Samuel N. Pike, and that thereupon the right and duty of maintaining said system of drainage and improvements, settling up the said partnership affairs, disposing of the said partnership assets, converting the same into money, and dividing the proceeds of said lands among the parties interested in the said partnership according to their respective interests, as hereinbefore set forth, devolved upon the said surviving partners. * * * That the said lands and real estate, on the death of the said Samuel N. Pike, descended to Lawrence Pike, the oldest son and heir at law of said Samuel N. Pike, free and clear of any dower or right of dower of said Ellen M. Pike therein, and is now held by the said Lawrence Pike in

trust for the said partnership, and that the said complainant and Joseph Tilney and Samuel Craighead, the surviving partners of said Samuel N. Pike, are entitled to have the legal estate in said lands conveyed to them to enable them to settle up the said partnership affairs, sell and convert the said lands into money, and divide the proceeds among the parties interested in said partnership according to their several and respective interests therein." And the decree then adjudged that a conveyance be made by Lawrence Pike to the surviving partners of the residue of the said partnership lands to which Samuel N. Pike held the legal title at the time of his decease, and that the widow of Samuel N. Pike execute a release dower, "but said deed so to be executed by said Lawrence Pike and Ellen M. Pike shall not operate to exclude them, or either of them, from their proper shares in that part of the proceeds of the sales of said lands which will accrue to the estate of said Samuel N. Pike upon the settlement of said partnership affairs. * * * And in order that the said lands and real estate so to be conveyed to the said surviving partners may be held and sold and disposed of by them clear of any cloud on the title thereof by reason of the devise in the will of the said Samuel N. Pike, it is further ordered, adjudged, and decreed that the said Samuel Craighead, Emanuel J. Miller, Joseph Tilney, and William R. Williamson, as executors of and trustees under the last will and testament of Samuel N. Pike, deceased, do also, within ten days after service on them of a copy of this decree, make, execute, and deliver to the said George W. Kidd, Joseph Tilney, and Samuel Craighead, as surviving partners as aforesaid, a deed of release or quitclaim, releasing to the said George W. Kidd, Joseph Tilney, and Samuel Craighead all claim of title to said lands under and by virtue of the devise in the said will of Samuel N. Pike, deceased." "That the said surviving partners of said Samuel N. Pike, deceased, do and shall proceed without unreasonable or unnecessary delay to settle up the affairs of the said partnership by selling and converting into money the said lands so to be conveyed, and collecting and disposing of the other assets of said partnership, and dividing the proceeds of the sales of the said lands and other assets, after the payment of the debts and expenses of administering the same, among the original parties mentioned in the said partnership, or those who have the right to represent them as heirs at law or next of kin, according to their respective interests. And it is further ordered, adjudged, and decreed that none of the conveyances, assignments, or transfers hereinabove decreed to be made shall in any manner prejudice the right of any of the parties of this suit or their heirs or lawful representatives to their lawful part or distributive shares of the assets of said partnership when the business thereof shall have been settled up and adjusted." That the said deeds and releases were subsequently executed and delivered to the surviving partners as directed by the said decree; and in or about the year 1886 said Ellen M. Pike, widow of Samuel N. Pike, conveyed, assigned, and set over unto the defendant Lawrence Pike the one-half part of "all the estate, right, title, and interest of the said Ellen M. Pike of, in, and to the lands and premises herein referred to, and in the proceeds of sale thereof, and all other estate, right, title, and interest which the said Ellen M. Pike ever had, then had, or could have of, in, and to the said lands and premises, or the proceeds of sale thereof." That all of the partners of the original copartnership who survived Samuel N. Pike, except George W. Kidd, had died before July, 1901. That in July, 1901, the said residue of said partnership lands, consisting of 2,707.528 acres, were sold to one John R. Ferrier for the net sum of $1,055,327.55, and conveyances and releases were executed and delivered to John R. Ferrier by all persons then in being who had or could have, upon any contingency, theory, or claim, any right, title, estate, claim, or interest in or to the said lands, or any part thereof, or in the proceeds thereof; and the share of the estate of Samuel N. Pike of said net proceeds of sale was:

Bonds of John R. Ferrier ..................................... $461,433 16
Cash ......................................................... 33,251 63
                                                              _____
                                                              $494,684 79

—That these bonds and cash were distributed among and paid to the children of Samuel N. Pike as personal property.

87 N.Y.S.—66

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGH-
LIN, JJ.

Chas. H. Luscomb, for plaintiffs.
Chas. H. Otis, for defendant.

O'BRIEN, J. Upon the agreed statement, from which we have,
in the foregoing summary, extracted only such facts as we deem the
more important and essential for the determination of the questions
involved, the plaintiffs contend that the share of the estate of Samuel
N. Pike in the proceeds of sale of the said partnership land passed
under his will to his trustees as real estate, and not as personal prop-
erty; while, on the other hand, the defendant contends that the
proceeds of sale of said copartnership lands passed under the will of
Samuel N. Pike as personal property. Differently stated, therefore,
the question is as to whether the estate or interest which Samuel N.
Pike had in the copartnership lands at the date of his death was real
or personal property. Few questions have received more extensive
discussion, both in this country and in England, than the one re-
lating to the interest which a partner has in real estate owned by
the partnership at the time of his death. To discuss it here would
serve no useful purpose in view of the clear and forcible way in which
the rules have been formulated and the doctrine established, so far
as this state is concerned, in the two leading cases of Fairchild v.
Fairchild, 64 N. Y. 471, and Darrow v. Calkins, 154 N. Y. 503, 49
N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637. In the former the
rule is thus given:

"In this country real estate belonging to a partnership, for the purpose of
paying debts and adjusting the equities between the members of the firm, is
treated as personal property, and what remains is considered and treated as
real estate, which would go to the heirs of the partners according to their in-
terests."

In the case of Darrow v. Calkins, supra, the doctrine is thus ably
stated in Chief Judge Andrews:

"The clear current of the American decisions supports the rule that, in the
absence of any agreement, express or implied, between the partners to the
contrary, partnership real estate retains its character as realty, with all the
incidents of that species of property, between partners themselves and also
between a surviving partner and the real and personal representatives of a
deceased partner, except that each share is impressed with a trust implied
by law in favor of the other partner that, so far as is necessary, it shall be
first applied to the adjustment of partnership obligations, and the payment
of any balance found to be due from the one partner to the other on winding
up the partnership affairs. To the extent necessary for these purposes, the.
character of the property is in equity deemed to be changed into personalty.
On the death of either partner where the title is vested in both, the share of
the land standing in the name of the deceased partner descends as real estate
to his heirs, subject to the equity of the surviving partners to have it appro-
priated to accomplish the trust to which it was primarily subjected. The
working out of the mutual rights which grew out of the partnership rela-
tion does not seem to require that the character of the property should
be changed until the occasion arises for a conversion, and then only to the
extent required. * * * But the general principles to which we have ad-
verted are those applied by courts of equity in determining the character
and incidents of partnership real estate in the absence of any agreement, ex-
press or implied, between the partners on the subject. It is, however, gen-

erally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes or only converted pro tanto for the purpose of partnership equities may be controlled by the express or implied agreement of the partners themselves, and that where, by such agreement, it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto. In respect to real estate purchased for partnership purposes with partnership funds, and used in the prosecution of the partnership business, the English rule of "out and out" conversion may be regarded as properly applied on the ground of intention, even in jurisdictions which have not adopted that rule as applied to partnership real estate acquired under different circumstances, and where no specific intention appeared. The investment of partnership funds in lands and chattels for the purpose of a partnership business, the fact that the two species of property are in most cases of this kind so commingled that they cannot be separated without impairing the value of each, has been deemed to justify the inference that under such circumstances the lands as well as the chattels were intended by the partners to constitute a part of the partnership stock, and that both together should take the character of personalty for all purposes; and Judge Denio, in Collumb v. Read [24 N. Y. 505] supra, expressed the opinion that to this extent the English rule of conversion prevailed here. That paramount consideration should be given to the intention of the partners when ascertained is conceded by most of the cases. See Hoxie v. Carr, 1 Sumn. 183 [Fed. Cas. No. 6,802]; Fall River Whaling Co. v. Borden, 10 Cush. 462; Collumb v. Read, supra; Parsons on Partnership, § 267."

The authorities in this state therefore go to the extent of holding that the question of whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted pro tanto, may be controlled by the express or implied agreement of the partners themselves, and it remains for us to determine whether, upon the submitted facts, an agreement, express or implied, has been shown under which the lands purchased by the partners were to be deemed personal property, because, in the absence of such an agreement under the general rule, they would preserve their incidents and characteristics—except for partnership purposes—of real estate.

It appears that Samuel N. Pike, a year after the making of his will and the disposition of his personal estate, entered into the partnership agreement which involved a large investment of his personal property, the copartnership having paid for the land $262,576.25 and for improvement $444,948.42, of which the share contributed by him was over one-half. The investment for improvement, it will be noticed, was vastly greater than the investment in the land itself, and there is force in the suggestion that an intention to convert might be implied, even in the absence of an express agreement to that effect. It is unnecessary, however, for us to have the decision of the case turn upon an intention to be implied from the fact of the larger investment made in the improvements, because we think the facts establish the existence of an express agreement between the parties that the lands should be held and treated for all purposes as personal property. It was agreed between the parties that the lands were to be purchased in the name of Samuel N. Pike, and sold for their joint account, and "the profits and proceeds of the sale thereof" divided. The lands were "to be reclaimed, and sold and converted into money, and the proceeds therefrom and profits or losses" were

to "be divided among said partners in proportion to their several interests therein; that is, in proportion to their contributions of capital." The terms of the agreement under which the lands were held were also expressly adjudicated in the chancery suit in New Jersey, to which all the parties in this action were parties. And, as indicative of the view entertained by one of the partners, we have, in the allegations of the bill of complaint filed in that suit by George W. Kidd, statements which, if regarded as true, show clearly that there was an express agreement that the lands the title to which were taken by Pike were to be deemed personal property. Such an agreement, when established, under all the authorities, would equitably convert the lands so purchased into personal property "out and out" for all purposes, including its devolution to the personal representatives of the deceased partner. The bill of complaint in the chancery suit alleges that "it was also further agreed * * * that the lands so to be purchased and reclaimed should always be personal property, and should be sold and converted into money, and the proceeds thereof divided * * * among the surviving partners and the legal representatives of the deceased partner or partners." And the decree in that suit adjudges that the residue of the partnership lands held in the name of Samuel N. Pike at the time of his death "are and have been the capital, assets, and stock of the said partnership; * * * that the said partnership was dissolved by the death of the said Samuel N. Pike, and thereupon the right and duty of disposing of said partnership assets, converting the same into money, and dividing the proceeds, * * * devolved upon the said surviving partners." And it was also adjudged therein that the lands in question descended to Lawrence Pike, the oldest son, as heir at law of Samuel N. Pike, free and clear of any dower right of Ellen M. Pike, "and is now held by the said Lawrence Pike in trust for the said partnership," and that the surviving partners "are entitled to have the legal estate in said lands conveyed to them to enable them to settle up the said partnership affairs, sell and convert the said lands into money, and divide the proceeds among the parties interested in said partnership, according to their several and respective interests therein." Pursuant to the terms of that decree the deeds and releases were executed, and in July, 1901, the lands were sold and converted into money, and the proceeds divided as personal estate. We think that this disposition was right, because, taking the facts as expressly stipulated, it follows, as in effect it was adjudged by the court of chancery, that under the agreement it was the evident intention of the parties that the lands purchased and improved should for all purposes be deemed to be personal property. The question which has been presented for our determination should therefore be answered in favor of the view contended for by the defendant.

Judgment ordered for the defendant, with costs. All concur.