(115 App. Div. 413)

### BUCKLEY v. DOIG et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

PARTNERSHIP—REAL ESTATE—EQUITABLE CONVERSION.

Plaintiff and defendants' intestate entered into a partnership agreement to purchase certain lots, improve them by the erection of buildings, sell them as favorable opportunity offered, and divide the profits, taking the profits to purchase more lots for improvement and sale; and, in the event of a disagreement or dissolution, all the partnership holdings should be converted into cash, and the money divided. As each parcel of land was purchased, a separate account was opened, the property being charged with the purchase price, cost of improvement, interest on mortgage, and expenses of maintenance, and credited with the amount raised by the mortgage, if any, rents, and selling price; the balance representing profit or loss, which was charged or credited to that account. No partner was ever charged with the purchase price of any land, nor with the expense of improvement or maintenance, nor with any portion of the proceeds of land sold, and, the title to certain parcels having been taken in the name of both partners separately, deeds were executed conveying the property to plaintiff and intestate, as tenants in common. *Held* that, on the dissolution of the firm by the death of intestate, the remaining parcels of real estate should be treated as personalty as between intestate's widow and personal representatives and his heirs at law.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 108, 522, 523.]

Ingraham, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Richard W. Buckley against Calvin G. Doig and another, as administrators of the estate of Robert McCafferty, deceased. From a judgment on a referee's report in favor of plaintiff, defendants appeal. Affirmed, on opinion of Parker, Referee, which is as follows:

Beginning with 1877, the plaintiff, Buckley, and the defendant's intestate, McCafferty, began the purchase of lots in the city of New York, the erection of buildings thereon, their sale, the repurchase of other lands with a portion of the profits, and a division of the rest of the profits between them, which course of business was continued until the death of McCafferty in 1905. During that time the firm, which was designated by the members as McCafferty &

Buckley, used in the purchase of lots $1,686,189, and in the improvement thereof the sum of $2,232,903; in all, $3,918,092. At the time of Mr. McCafferty's decease all of these lands had been disposed of except 21 parcels, having a value of $241,844.44. The defendant left, him surviving, no descendants, but did leave, him surviving, a widow, brothers, sisters, nephews, and nieces as his heirs at law and next of kin. He was seised of other real estate at the time of his death of the net value of $249,850, and had personal property of the value of $30,684.84, and personal debts approximating $53,859.61. In his individual estate, therefore, his widow has but a dower interest in so much of the real estate as shall remain after the payment of his debts, which exceed the amount of his personal estate, and the controversy in this litigation is between the widow and the personal representatives of the deceased and the heirs at law. The share or interest which McCafferty had in the firm property at the time of his death, the former claim, not only for the purposes of the partnership, but also for all and every purpose, must be deemed to be personal property; while the latter insist that, although in equity so much of the property as may be required to pay the partnership debts will be treated as personalty, the residue of the property will pass under the statute of descents. The firm had personalty amounting to $30,684.84 and some debts. It is conceded on all sides that, if the personalty should prove insufficient to pay the debts, which at the time of McCafferty's death exceeded $33,000, the real estate must be treated in equity as converted into personalty for the purpose of satisfying the firm obligations and adjusting the accounts between the partners. As to the remainder, the inquiry is whether, under the evidence introduced at the trial, it is to be treated as real estate for all purposes, or as personalty for all purposes. Under the English rule there would be no opportunity for debate whatever, as under it partnership lands become ipso facto, in the view of a court of equity, converted into personalty for all purposes, as well as for the purpose of the adjustment of partnership debts and the claims of the partners inter se, as for the purpose of determining the succession as between the personal representatives of a deceased partner and heirs at law. But the American rule, or, at least, it may be said the rule adopted by a great majority of the states, is very different. In effect, it is that partnership real estate, unless otherwise expressly or impliedly agreed, retains its character as realty between the partners themselves and also between the surviving partner and the personal representatives of the deceased partner, except to the extent that it may be required to pay partnership obligations, or to pay any balance found due from one partner to another. To the extent that partnership real estate is required for these purposes, the share of each is embraced in a trust implied by law, which equity in enforcing treats as converted into personalty. The reason for the difference in the rule of the two countries is pointed out in a most interesting way by Chief Judge Andrews in Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637, who in that case found in a deed and surrounding circumstances evidence of an intention to have an "out and out" conversion of the partnership realty into personalty for all purposes. In the course of the opinion, the exception to the general rule was referred to as follows: "But the general principles to which we have adverted are these applied by courts of equity in determining the character and incidents of partnership real estate, in the absence of any agreement, express or implied, between the partners on the subject. It is, however, generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted pro tanto for the purpose of partnership equities, may be controlled by the express or implied agreement of the parties themselves; and that where by such agreement it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto." This is the latest utterance of the Court of Appeals on this subject, and upon it was rested the decision of the court. It therefore states the rule as it is in this State. In that case the partners did not agree in terms that the deed should operate to convert the partnership lands into a personalty "out and out" for all purposes, but the court found from the language employed in the deed, as construed in the light of circumstances surrounding the

transaction, an intention on the part of the partners to substitute in the place of Darrow's prior interest in the lands an interest in him and his representatives in any surplus which would remain after the sale by his partner and the adjustment of the partnership affairs.

The question, therefore, in this case is whether, under the terms of the partnership as construed, not only in the light of the circumstances surrounding it, but also aided by the construction placed upon it by the partners themselves, it is clear that the parties intended that their dealings in real estate should be treated as personalty for all purposes. If that intention be found, then it must follow that McCafferty's interest in, the real estate, as well as that of Buckley, must be treated as personalty for all purposes; for distribution as well as for adjustment of the partnership equities. Since the decision in the Darrow Case, supra, the Appellate Division of this Department has had before it a case in which it has held certain valuable partnership real estate to have been by the intention of the parties converted into personalty for all purposes, and hence decreed its distribution to the next of kin. Barney v. Pike, 94 App. Div. 199, 87 N. Y. Supp. 1038. The facts of that case are so nearly on all fours with the facts of this one that it should, in my judgment, be treated as a controlling authority. But were I not commanded by that authority to hold that the parties intended that these lands should be treated as personalty for all purposes, the facts of this case would seem to me to require the inference that it was the intention of the parties that the lands which they were to hold should be treated as personalty. Now, it is true that Buckley and McCafferty did not say, in so many words, that the lands which they should buy and improve and sell, and then divide such of the profits as they did not see fit to use in the purchase of more lots for improvement and sale, should be at all times treated as personalty; but that they so intended seems to me a necessary conclusion from the agreement which they made and their after conduct. The agreement was not in writing, but was oral. It was made in the latter part of October or the beginning of November, 1877. One of the parties to it (Mr. Buckley) was an architect, skilled in the preparation of plans for buildings and the supervision of construction. Mr. McCafferty was a financier in a moderate way, and they were brothers-in-law, with confidence in each other, which apparently never abated during the nearly 28 years that their business relations with each other continued. The conversation which created the partnership and its boundaries took place in the immediate vicinity of the four lots situated on Fifty-Fifth street, which constituted their first purchase. In passing, it may be said that neither party ever contributed a dollar either for payment of the lots or the erection of the buildings thereon. The cash required for the purpose was raised on a building loan, and the profits which resulted from the sale (amounting to over $30,000) formed the nucleus of the capital with which they continued their business; each of the partners thereafter contributing cash to the firm as it became necessary, and withdrawing profits as they needed them or desired.

Mr. Buckley undertook to give the conversation between them by which the partnership was created. He said: "We were to form a partnership, and divide each share, half and half. I was to make the plans and supervise the construction of the buildings, and he would attend to financial affairs, and we were to divide the profits at the end of the job, and if we felt like it, the money to reinvest it in more land, which we did, and have been doing for the last thirty years. I said to Mr. McCafferty, or Robert (he was my brother-in-law), 'Now, what if any disagreement occurs between us? We ought to have some distinct understanding what to do.' 'Well,' he says, 'we will sell everything, and divide the money between us.'" And it was further agreed that upon the dissolution of the partnership the partners should sell all their holdings, and divide the proceeds of the property between them in proportion to their respective interests as partners, which was half and half. Briefly, then, the agreement between them was for the purchase of lots, improving them by the erection of buildings, their subsequent sale as favorable opportunity offered, the division of the profits, taking such of the profits as they thought best to purchase more lots for improvement and sale, and, in the event of a disagreement between the partners or dissolution of the partnership, sell all the

partnership holdings, convert the proceeds into cash, and divide the money. Thus, it appears that their purpose was to deal with the lands as the manufacturer does with raw materials—put them into condition for use and sell them. They purchased a lot, not to hold it as an investment, but to improve it, and sell it for a reasonable profit.as speedily as possible, and with the proceeds buy more lots and erect more buildings. This process resulted in the acquisition of property and its improvement during the existence of the partnership to an extent equaling nearly $4,000,000, and yet at the time of the dissolution of the partnership by the death of McCafferty the partnership property remaining unsold was of the value of less than $242,000. Thus the agreement that their profits should be divided went on for many years, until the dissolution of the partnership by the death of one of them left nothing to do under their agreement except to sell the comparatively small amount of property remaining, and divide the money after adjusting the partnership equities.

Now, it is suggested by the learned counsel for the heirs at law that this partnership agreement had to do with the purchase of the first four lots only, and that the subsequent transactions, aggregating several million dollars, were not under that agreement. The facts do not seem to me to justify that plea. The evidence of the plaintiff, Buckley, considered as a whole, requires the conclusion that the conversation was intended by the parties to cover, not only the purchase of those lots, but any further dealings in real estate that they might engage in. The answers of the witness on direct and cross-examination show that at times he was either confused in his answers, or did not clearly comprehend the question put to him; but the witness was undoubtedly a conscientious man, and the necessary inference from his whole testimony is that both parties intended that the oral agreement which they were making should cover all their firm transactions in real estate, whether it should happen to cover only the four lots or embrace many more, and his testimony in that respect is supported by several circumstances. The plaintiff's testimony, being uncontradicted as to the details of the oral agreement creating the partnership, must be accepted as conclusive. Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102; Second Nat. Bank of Morgantown v. Weston, 172 N. Y. 250, 64 N. E. 949.

But the plaintiff's testimony has very substantial support in the conduct of the parties during all the.28 years which follow the making of the oral agreement, and closed with the death of McCafferty. The parties adopted the firm name of McCafferty & Buckley, and at once a set of books was opened under Mr. McCafferty's instructions, containing a profit and loss account, which continued uninterruptedly from that day until now. Correspondence was at once opened with other parties by the firm under the name of McCafferty & Buckley, and has so continued from that day until the death of McCafferty. About four months after the first transaction was concluded, which resulted in a profit of over $30,000 to the firm, without the contribution of a dollar of personal capital by either, the purchase of the lots constituting a second transaction took place, which in turn was followed by another purchase, and still others, until the aggregate purchase price of the lots and the cost of the buildings erected thereon was about $4,000,000. Again, the manner in which they kept their books supports Mr. Buckley's testimony. When a parcel of land was purchased, a separate account of that land was opened in a book by itself, and in that account was entered on one side the purchase price, the cost of improvement, interest on mortgage, and expenses of maintenance, while on the other side was entered the amount raised by the mortgage, if any, rents collected, and selling price; balance represented by profit or loss. Neither partner was ever charged with the purchase price of any lands, nor with the expense of improvement or maintenance, or with any portion of the proceeds of land sold. Their respective personal accounts contained simply credits for cash contributed and charges for cash drawn from the firm account, or personal bills paid by the firm for their use. The respective interests of the partners in the several parcels of land were never fixed and never appeared on the books in any account whatever. Even the profits upon sales were not credited to them as individuals, but went into the profit and loss account, so that losses on one transaction were offset proportionately by profits on another. So, too, in the annual trial balance submitted to each of the partners, the real and personal properties

were set forth together, as if they were so many items of cash; none of them being credited, in whole or in part, to the respective partners.

In this connection it should be observed that in Barney v. Pike, supra, the court said: "The investment for improvement, it will be noticed, was vastly greater than the investment in the land itself, and there is force in the suggestion that an intention to convert might be implied even in the absence of an express agreement to that effect. It is unnecessary, however, for us to have the decision of the case turn upon an intention to be implied from the fact of the larger investment made in the improvements, because we think the facts establish the existence of an express agreement between the parties that the lands should be held and treated for all purposes as personal property." The value of the inference of intention is not different in this case from that of Barney v. Pike, for in that case the purchase price of the lands was $262,576.-25, and for improvements $444,948.42, while in this case the purchase price of the lots was $1,686,189, and the amount expended for improvements was $2,232,903; that is, McCafferty & Buckley invested $2,232,903 in the purchase of lumber, stone, iron, plaster, brick, and other materials, all of which were used in the erection of houses upon the lots purchased, and thus became so attached to the land itself as to be of small value when separated—a situation which would seem to be covered by the language of the court in Darrow v. Calkins, supra, in which the court said, at page 516 of 154 N. Y., at page 64 of 49 N. E.: "The investment of partnership funds in lands and chattels for the purpose of a partnership business, * * * so commingled that they cannot be separated without impairing the value of each, has been deemed to justify the inference that under such circumstances the lands as well as the chattels were intended by the partners to constitute a part of the partnership stock, and that both together should take the character of personalty for all purposes."

While in my judgment the inference to be deduced from the fact of the expenditure of so much larger a sum in improvements than is paid for the land is not of sufficient force, standing alone, to authorize a determination that it was the intention of the parties that the land should be treated as personalty, nevertheless, it is a circumstance to be considered, in connection with other facts tending to support the view, that such an intention is to be found in the oral agreement of the partners. On the other hand, there is a circumstance which it is strongly urged tends to show that on November 12, 1902, McCafferty regarded their respective interests as real estate, not personalty. On that date parcels Nos. 1, 3, 7, 8, 9, and 20, as described in the complaint, stood in the names of Robert McCafferty and Richard W. Buckley as grantees, while parcels Nos. 4, 5, and 6 stood in the name of Richard W. Buckley as grantee, and the property described in the complaint as parcels Nos. 2, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 21 stood in the name of Robert McCafferty as grantee. Some time prior to that date, McCafferty requested the bookkeeper to prepare deeds from Buckley and his wife to himself for an undivided half interest in the parcels the title to which was on the record in Buckley's name, and also deeds from McCafferty and wife to Buckley for undivided half interest in each of the parcels the title to which stood in McCafferty's name, and on the 12th day of November all of those deeds were executed. After that date the title to all the real property which had been purchased and improved by the firm stood on the record in the names of Buckley and McCafferty as tenants in common, with the exception of parcels 15 and 16, of which McCafferty and his wife conveyed to the plaintiff an undivided interest on May 23, 1903. It does not appear that McCafferty consulted any lawyer upon the subject, but the bookkeeper does testify that McCafferty said that his object was to divide the property, and give to each party a half interest in each parcel; and further that he said; "I am in very poor health, indeed, and cannot tell what will happen, and would like to have these titles straightened, so that each will have a half interest on the records." Now it seems that in the course of the firm dealings title was occasionally taken by Buckley and on other occasions by McCafferty, but they were at all times treated as purchases by the firm. The account as to each purchase was opened in a separate book, and the profit or loss after sale was carried to the profit and loss account of the firm. It may well be that Mr. McCafferty thought that the execution of these deeds would

prevent possible controversy after his death, inasmuch as they would show that on the record each had a one-half interest in all the properties, for that was practically the situation. The record does not show exactly the state of the accounts at that date, but it is clear from the evidence that the partners had drawn from the profit and loss account in substantially equal amounts. At the time of the death of McCafferty, he had drawn about $11,000 more than his partner, Buckley. His purpose could not have been to have brought about a settlement of their affairs and the division of the property, because no such suggestion was made by either to the other. There was no attempt to divide the mortgages held by the firm, nor were similar deeds made of all the firm realty on November 12th, for, as we have seen, Mr. McCafferty still retained title in a large tract of land, known as parcels Nos. 15 and 16, until May 23, 1903; and on still another occasion after November 12, 1902, Mr. McCafferty conveyed his title to the Eighty-Second street house to his partner, Buckley, for the purpose of enabling him to effect a sale, which was one of the objects of the partnership. Not only was no adjustment of the interest of the respective partners made or attempted, but none would have been made conveniently at that time, for the reason that building operations were still in progress and uncompleted, and the firm debts exceeded the personal property, for which excess the lands were still chargeable in any event. No attempt was made to adjust the profit and loss account, and thereafter the business of the firm continued as before; the firm holdings being carried on the firm books, the rents being collected by the firm, and expenses of administration paid. Indeed, no change whatever in the conduct of the partnership affairs occurred, each of the partners continuing to transact the business of the firm as before.

All of the facts, considered together, incline me to the view that McCafferty had no other purpose in bringing about these conveyances than to cause it to appear upon the records that each party had an undivided half interest in the properties to prevent future controversy. If he had any other purpose, the plaintiff, Buckley, did not know of it. They entered into no agreement between themselves which operated to modify in any degree whatever the original partnership agreement, and that oral partnership agreement provided, as we have already seen, that all lands should be sold, and the moneys divided between the partners. Nor did they make any attempt to settle up the firm business or adjust their accounts, and it necessarily follows that the original agreement stood unaffected. The conveyances, therefore, of November 12th did not affect in any wise the original agreement of the parties, and as a circumstance it has no value, except in so far as it bears upon the question whether it was the original intention of the parties that the lands should be treated as personalty for all purposes, never to be held as a permanent investment, but to be disposed of as soon as a reasonable profit could be obtained, and the proceeds in the lands divided between the partners. And it has not in my judgment sufficient probative force to overcome the evidence to be found in the agreement of the parties, and the practical construction of that agreement, placed upon it by a long course of dealing, together with the other circumstances to which I have referred, all of which, taken together, satisfy me that it was the intention of the parties to the agreement that the lots to be purchased and improved by them should be treated as personalty for all purposes.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Albert B. Boardman, for appellants.
Henry A. Forster, for respondent Buckley.
Amasa R. Angell, for respondents Doig and others.

PER CURIAM. Affirmed on opinion of referee.

INGRAHAM, J. (dissenting). I am unable to concur in the affirmance of this judgment. The action was brought for a final settlement of the accounts of the firm of McCafferty & Buckley, composed of

the plaintiff and Robert McCafferty, who died on the 11th of February, 1905. The question on this appeal is between the heirs at law and the administrators of the estate of Robert McCafferty, as to whether certain real property which was vested in Robert McCafferty is to be treated as personalty, and goes to his personal representatives, or as real estate, descending to his heirs at law. The referee found that the plaintiff and McCafferty formed a copartnership in the month of November, 1887, for the purpose of buying real property and the improvement and sale thereof, and such was the business carried on by said firm from the time of inception to the date of Robert McCafferty's death; that this agreement was verbal, and was never modified after it was originally made in the year 1887; that by the terms of the agreement between the partners the firm was to purchase real property for their joint and equal benefit; that the lands so purchased should be improved and sold, and the proceeds should be employed in the further purchase of lands in like manner, which should be sold, and that the partners should be entitled to receive one-half of the profits arising from the transactions; that it was further agreed that, upon the dissolution of the firm, or in case of any disagreement between the partners, all real property then remaining on hand should be sold, and the proceeds thereof divided among the partners; that pursuant to said agreement, the said firm from the time of its formation to the date of McCafferty's death bought, improved, and sold large quantities of real property in the city of New York and elsewhere, and the profits arising from such sales were either reinvested in lands or personal property, or divided between the several partners; "that the title to the lands purchased by the firm was taken, as a matter of convenience, sometimes in the name of the firm, and sometimes in the name of one or other of the partners." In relation to this finding, an examination of the record shows that some of the conveyances of the real property were to Robert McCafferty and Richard W. Buckley, but, so far as appears, the name of the firm was not expressly used; the conveyances being to the two individuals, who thereby became tenants in common of the property so conveyed. Other conveyances were taken either to the plaintiff or to McCafferty individually.

The referee found as a conclusion of law that the plaintiff, as surviving partner of the firm of McCafferty & Buckley, upon the death of Robert McCafferty held title to all the partnership lands in the first instance as trustee for the creditors of said firm, and, after the satisfaction of debts, as trustee for those entitled to participate in the estate of Robert McCafferty, deceased; that the lands described in the complaint were copartnership property belonging to the firm of McCafferty & Buckley, which at the time of the death of McCafferty should be deemed to be equitably converted into personalty, and that the share thereof to which McCafferty would have been entitled should be paid to his administrators, to be by them administered upon and distributed in accordance with the statute of distributions. Upon the trial it was proved that McCafferty was taken sick about two years prior to 1902; that after November 12, 1902, there were no new copartnership enterprises undertaken, and the last conveyance of prop-

erty to either of these copartners seems to have been on June 16, 1899. This was the Eighty-Second street property. The work of construction on that property was practically finished in 1902, and all that was done after that was some alterations in the houses erected thereon. In the year 1902 some of the real property which had been purchased by the parties to this copartnership stood in the name of McCafferty and Buckley, some in the name of Buckley, and some in the name of McCafferty. At that time McCafferty called the defendant Doig, who was the bookkeeper and confidential man of the firm, and requested him to have deeds prepared so that the interests of himself and Buckley could be divided. "He said he wanted the interest divided, and his half interest conveyed from him to Mr. Buckley and from Mr. Buckley to him, where necessary, in order that each party might have one-half interest in each piece of the property. * * * I am in very poor health, indeed, and can't tell what will happen, and would like to have these titles straightened, so that each will have a half interest on the records." At this time the buildings upon all the property were substantially completed, and after that date the joint operations consisted in getting what rents could be obtained from the properties in hand, and selling properties from time to time, as opportunities offered, taking care of the properties, paying taxes and other carrying charges, and paying debts.

I entirely concur with the learned referee in his statement of the law. He says the American rule is:

"That partnership real estate [unless otherwise expressly or impliedly agreed] retains its character as realty between the partners themselves, and also between the surviving partner and the personal representatives of the deceased partner, except to the extent that it may be required to pay partnership obligations, or to pay any balance found due from one partner to another. To the extent that partnership real estate is required for these purposes, the share of each is embraced in a trust implied by law, which equity in enforcing treats as converted into personalty."

And he then cites from the opinion of Judge Andrews in Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637, as follows:

"It is, however, generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted pro tanto for the purpose of partnership equities, may be controlled by the express or implied agreement of the parties themselves; and that where by such agreement it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto."

The referee then cites Barney v. Pike, 94 App. Div. 199, 87 N. Y. Supp. 1038, as decisive of the case at bar in favor of the proposition that the partners did intend that the real estate owned in common should be treated as personalty for all purposes. In that case, after an examination of the authorities, it was held that:

"The authorities of this state, therefore, go to the extent of holding that the question of whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted pro tanto, may be controlled by the express or implied agreement of the partners themselves; and it remains for us to determine whether, upon the submitted facts, an agree-

ment, express or implied, has been shown under which the lands purchased by the partners were to be deemed personal property, because, in the absence of such an agreement, under the general rule, they would preserve their incidents and characteristics (except for partnership purposes) of real estate."

Whatever the understanding between these partners as to the way that this real property should be treated prior to the year 1902, I suppose the question here is to be determined upon the understanding between the partners at or immediately prior to the death of McCafferty. It is true that from the time the business was commenced, down to the year 1902, the property purchased on the joint account of these partners, whether the title was taken as tenants in common or in the name of one of the individual partners, was treated as copartnership property. The property was not purchased for investment, nor intended to be used in any way except for the purposes of improvement and sale, and when sold the profits realized were equally divided. If the property had continued in this condition, without further action by the partners, I should be quite willing to concur in the conclusion of the referee. But it seems to me that an entirely different situation was created by the act of the parties in dividing among themselves the copartnership real property in the year 1902. McCafferty had been sick for about two years. He then instructed the bookkeeper of the firm to prepare deeds of the property, so that there should vest in each partner an undivided half of the real property belonging to the firm, and deeds to carry out this intention were prepared and executed by the partners. After that time, each partner was the owner of an undivided half of the firm realty. This, it seems to me, worked a change in the nature of the holding of each partner, so that the real property which had before belonged to the firm was divided, and thenceforth each partner held, not an undivided interest in the property as firm property, but an undivided interest in this realty that had belonged to the firm as a tenant in common; in other words, the status of the property was changed from firm property to the individual property of the respective partners. Prior to that time, it might have been said that all of the property was held as property of the firm, and thus, under the rule to which attention has been called, all the realty being property of the firm, the interest of each partner was an interest in the assets of the firm, and therefore the interest of each individual was to be deemed personalty. But after this significant transfer, by which all of the firm real property was vested in the members of the firm as tenants in common, it seems to me that it was the intention of the partners that the property was to lose its character as firm property, and vest in the individuals as tenants in common. In equity the interest of both partners would be subject to have the property charged with the payment of the firm indebtedness, or the interest of either partner charged with the payment of any amount due from him to the other partner. But the debts of the firm having been paid, and the balance from one partner to the other settled, the real property would preserve its characteristics of real estate. McCafferty said, when instructing his bookkeeper to prepare these deeds, that his object was to divide the property, and to give to each partner a half interest in each parcel. This would have been unneces-

sary if it had been the intention of the parties to continue to treat the property as partnership property, so that each partner's interest should be an interest in the assets of the firm, instead of an interest in the specific property in which the assets of the firm were invested; and when we see the partners, in pursuance of this agreement, dividing the property among themselves, so that each shall have his specific interest in these firm assets, instead of an interest in the firm assets, it seems to me that the conclusion is irresistible that it was the intention to make a division as to the real property by dividing it among the partners, so that the interest of each in these particular pieces of real property should become an interest in specific real estate. I agree with the referee that there was no intent to dissolve the firm, or to settle its affairs, or to divide all of the firm property; but I think the intent was to vest these specific pieces of real estate in the members of the firm as an individual interest. All of the property not thus distributed remained firm property, which included the mortgages and other personal property.

For these reasons, I think the judgment should be modified by directing that the title of McCafferty in the real property held in common with the plaintiff descended to his heirs at law, and that all provisions in relation to the sale of such property and the distribution of the proceeds thereof should be eliminated from the judgment.