DELMONICO v. GUILLAUME and DELMONICO.

Where real estate was purchased by two partners, with the funds and for the business of the copartnership, and one of them died leaving the firm without personal property sufficient to pay its debts; it was held that the real estate was in equity to be treated as personal property, and the surviving partner had an absolute right to dispose of it as such, for the payment of the debts of the firm.

As it respects the partners and their creditors, real estate belonging to the partnership, is in equity subjected to the same general rules as personal property.

A farm was purchased by two partners, in their joint names, for the partnership business, was used in that business, and paid for out of the funds of the firm. At the dissolution by the death of one of the partners, the debts of the firm exceeded its personal assets, and the survivor entered into a contract to sell a part of the farm. On a bill filed by him against the purchaser, for a specific performance, to which the heir of the deceased partner was a party, it was held that the survivor was entitled to sell the property, and performance was decreed with a direction that the heir should join in the conveyance.

Jan. 6; Feb. 24, 1845.

PETER A. and John Delmonico became partners as restaurateurs in the city of New York in October, 1827. In 1835, they purchased a farm in the eastern part of the city of Brooklyn, for the purpose of supplying their establishment with vegetables and provisions; and it was used for that purpose several years. It was paid for out of the partnership funds, and was conveyed originally to John, who executed to Peter a deed for an undivided half.

John Delmonico died March 10, 1842, leaving a widow and his only child, Josephine, surviving. He had no property other than that in the copartnership. At his death, the firm were largely indebted and to an amount exceeding their personal property. In order to aid in paying off the debts, the complainant, Peter Delmonico, entered into a written contract with the defendant, by which he agreed to sell and convey to him a part of the farm equal to three city lots.

At the time appointed for the payment of the contract price, the complainant tendered a deed of the three lots to the defendant, which he refused to receive, because the former had no

title to one undivided half of the farm, the same being vested in the infant Josephine.

This bill was thereupon filed against Guillaume and Josephine Delmonico, to compel the former to perform his contract.

There was no controversy as to the facts, all of which were proved by the testimony as against the infant defendant.

*A. Rapallo*, for the complainant, cited Story on Part. 128 to 132, 138, and the authorities there cited; 3 Kent's Comm. 64, 5th ed.; Collyer on Part. 76, 2d Amer. ed.; *Dyer* v. *Clark*, 5 Metc. 562; *Howard* v. *Priest*, ibid. 582.

*J. Anthon*, for the defendant Guillaume.

*G. Gifford*, for the infant, J. Delmonico.

THE ASSISTANT VICE-CHANCELLOR.—The proof is full and conclusive that the farm in Brooklyn was purchased by Peter and John Delmonico, while they were partners, for the partnership business; was used for that business; and was paid for out of the funds of the copartnership.

It also appears that the debts of the firm upon its dissolution by the death of John Delmonico, greatly exceeded the value of the personal property owned by the firm.

So far as the partners and their creditors are concerned, real estate belonging to the partnership, is treated in equity as personal property, and subjected to the same general rules.

In this case therefore, Peter A. Delmonico, as the surviving partner, became entitled to the Brooklyn farm, and as between himself and the heir of John, he had an absolute right to dispose of it, for the payment of the debts of the firm, in the same manner as if it had been personal estate.

The authorities to this effect are numerous. (*Fereday* v. *Wightwick*, 1 R. & Mylne, 45, and observed upon in 1 M. & Keen, 663; *Phillips* v. *Phillips*, 1 M. & K. 649; *Broom* v. *Broom*, 3 ibid. 443; *Cookson* v. *Cookson*, 8 Simons, 529; *Townsend* v. *Devaynes*, 11 Simons, 498, note; *Dyer* v. *Clark*, 5 Met-

calf, 562; *Howard* v. *Priest*, 5 ibid. 582; Story on Partnership, § 92, 93; 3 Kent's Comm. 64, 5th ed.)

The case of *Coles* v. *Coles*, (15 Johns. 159,) was at law. In *Smith* v. *Jackson*, (2 Edw. Ch. R. 28,) the Vice-Chancellor concurred in the doctrine of the cases before cited, to its extent as applicable to creditors.

Indeed, the cases of *Phillips* v. *Phillips* and *Broom* v. *Broom*, go so far as to hold that this farm would be deemed personalty as between the real and personal representatives of the deceased partner. If that doctrine were applied here, the personal representative would be a necessary party to the suit. I will not express an opinion upon the point adjudged in those cases.

There is no doubt that the legal title is vested in the infant defendant, to the extent of one undivided half of the lots contracted to Guillaume. But the equitable right and interest being vested in the surviving partner, the infant is a mere trustee of the legal estate, and the Court of Chancery must compel a conveyance of the estate upon the application of such surviving partner. (2 R. S. 194, § 167; *Broom* v. *Broom, ubi supra.*)

The latter will be required to account for this property as a part of the assets of the copartnership.

If the complainant can make a good title in other respects, he may have a decree for specific performance.

The guardian *ad litem* of the infant will join in the conveyance to Guillaume, executing it for and in the name of the infant. And the complainant must pay the guardian his costs of the suit.