RICHARD W. BUCKLEY, Respondent, *v.* CALVIN G. DOIG et al., as Administrators of the Estate of ROBERT McCAFFERTY, Deceased, et al., Respondents, and JOHN McCAFFERTY, Individually and as Executor of WILLIAM McCAFFERTY, Deceased, et al., Appellants.

1. PARTNERSHIP — WHEN LANDS OWNED BY FIRM DEALING IN REAL ESTATE DEEMED TO BE CONVERTED INTO PERSONALTY BY PARTNERSHIP AGREEMENT.　Where a partnership formed for that purpose has carried on the business of dealing in real estate as a commodity, buying it absolutely for the purpose of improving and selling it and either dividing the proceeds of the sale amongst the partners or reinvesting it in more real estate to be similarly dealt with, carrying it upon the firm books indiscriminately with personal property as part of the assets of the firm, and this course of conduct is in accordance with and confirmatory of an oral agreement for a copartnership and for a conversion of the real estate into personalty upon dissolution of the firm or disagreement of the partners, a trial court is justified in finding as a matter of fact an implied intention and agreement upon the part of the copartners that there shall be a conversion of their real estate into personalty for all purposes, and that such intention and agreement will apply to real estate happening to be undisposed of at the death of one of the copartners upon a distribution of his estate as between his heirs at law and personal representatives.

2. WHEN SUCH CONVERSION NOT IN CONFLICT WITH REAL PROPERTY LAW (L. 1896, CH. 547, § 207).　A partnership for dealing in real estate may be created by parol and the question whether the interest of a partner in such real estate shall for purposes of distribution be treated as realty or personalty is incidental to the relation of copartnership. Its disposition is governed by the agreement, express or implied from the acts of the copartners, and the finding of an intention for a conversion does not conflict either with the spirit or the letter of the statute

(Real Property Law [L. 1896, ch. 547] § 207), which provides that " An estate or interest in real property,  *  *  *  or any trust or power over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same."

  3. Evidence — Effect of Exchange of Deeds Between Partners. Where it appears that a short time before the death of one of two copartners carrying on business under such agreement, and in view of his apprehended death, deeds were passed between the partners so as to invest each one upon the record with a half interest in each parcel of land then on hand and which included some, or all, of the lands remaining after the death of such partner, that fact does not conclusively indicate an intent that the real estate, held by the firm, should be regarded as such and not as personalty, where other inferences are deducible therefrom and no change was made upon the partnership books whereby the real estate was charged up to the respective partners in accordance with the deeds which were executed or in any manner withdrawn from the copartnership agreement and arrangements as they had always existed.

  *Buckley* v. *Doig*, 115 App. Div. 413, affirmed.

(Argued February 28, 1907; decided April 9, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 10, 1906, affirming a judgment entered upon the report of a referee which determined the respective claims of the personal representatives and heirs at law of Robert McCafferty, deceased, to the latter's interest in certain copartnership real estate.

The facts, so far as material, are stated in the opinion.

*Albert B. Boardman, Henry W. Clark* and *Frank S. Gannon, Jr.*, for appellants. No out and out conversion of the real property was ever effected. No express agreement for a conversion is claimed. The facts do not warrant the application of the doctrine of equitable conversion as affecting the succession to this property. (*Smith* v. *Jackson,* 2 Edw. Ch. 28; *Patterson* v. *Brewster*, 1 Edw. Ch. 352; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366; *Buckley* v. *Buckley*, 11 Barb. 43; *Collumb* v. *Read*, 24 N. Y. 505; *Darrow* v.

*Calkins,* 154 N. Y. 503 ; *Foster's Appeal,* 74 Penn. St. 391 ; *Haeberly's Appeal,* 191 Penn. St. 239 ; *Carter* v. *Flexner,* 92 Ky. 400 ; *Lennon* v. *Fones,* 48 Ark. 557.) If an agreement for a conversion ever existed it was not in force at the time of McCafferty's death ; the real property in question was withdrawn from the operation of any such agreement on November 12, 1902. (*Steward* v. *Blakeway,* L. R. [4 Ch. App.] 603 ; *Lenon* v. *Fuoer,* 48 Ark. 557.)

*John L. Hill* and *Robert L. Redfield,* for plaintiff, respondent. The finding of an agreement for an absolute conversion was supported by sufficient evidence and is conclusive upon the appellants. (*Ostrom* v. *Greene,* 161 N. Y. 353 ; *Ensign* v. *Ensign,* 120 N. Y. 655 ; *Cooke* v. *Whipple,* 55 N. Y. 150 ; *Greenwood* v. *Marvin,* 111 N. Y. 423 ; *Burgess* v. *Simonson,* 45 N. Y. 225 ; *Darrow* v. *Calkins,* 154 N. Y. 503 ; *Coster* v. *Clarke,* 3 Edw. Ch. 428 ; *Barney* v. *Pike,* 94 App. Div. 199 ; *Collumb* v. *Read,* 24 N. Y. 505 ; *Hiscock* v. *Phelps,* 49 N. Y. 97 ; *Fairchild* v. *Fairchild,* 64 N. Y. 471.) The question of the mutual understanding and intention of the partners in executing the deed in November, 1902, is one of fact, and there having been no finding of such intention and none having been requested, it cannot be assumed in this court that any such existed. (*Trustees of East Hampton* v. *Vail,* 151 N. Y. 463 ; *First Nat. Bank* v. *Dana,* 79 N. Y. 108 ; *Henry & Co.* v. *Talcott,* 175 N. Y. 385 ; *Thomson* v. *Bank of B. N. A.,* 82 N. Y. 1 ; *Palmer* v. *Cypress Hills Cemetery,* 122 N. Y. 429 ; *Koehler* v. *Hughes,* 148 N. Y. 507 ; *Burnap* v. *Nat. Bank of Potsdam,* 96 N. Y. 125 ; *Ostrander* v. *Hart,* 130 N. Y. 406.) The finding that the deeds were executed in 1902 is not inconsistent with the further finding that the lands remained partnership property at McCafferty's death. (*Trustees, etc.,* v. *Vail,* 151 N. Y. 463 ; *Snyder* v. *Seaman,* 2 App. Div. 258 ; *Town* v. *M., etc., Co.,* 116 N. Y. 1.)

*Amasa R. Angell* for defendant, respondent.

HISCOCK, J.   This action was brought to effect a settlement of the affairs of a copartnership composed of plaintiff and one Robert McCafferty, deceased, and especially to procure a sale and distribution of the proceeds of a number of parcels of real estate which belonged to said copartnership at the time of the death of McCafferty.

The only substantial issue involved is whether said real estate is to be regarded as having been so converted for all purposes into personalty that the share of the deceased partner therein after payment of copartnership debts and adjustment of equities between the copartners will pass to his personal representatives rather than to his heirs at law.   To state it in a slightly different form the question is whether there has been an out and out conversion of this copartnership real estate for all purposes, and even as between heirs and next of kin, or only a qualified one for the purposes and interests of the copartnership.   The learned referee and Appellate Division have adopted the former view, and while the question is a perplexing as well as an interesting one, we think that their conclusions are justified by the facts presented.

A proper consideration of the questions of law requires a somewhat detailed statement of the facts.

The case is relieved of the uncertainty and embarrassment which sometimes attend the decision of a question of this character by the common agreement of all the parties that the plaintiff and the deceased were copartners, and that the real estate in question was copartnership property.   Neither is there any conflict of evidence as to what occurred in connection with the copartnership.   This was formed in 1877 to deal in real estate under an oral agreement, which is thus detailed by the plaintiff : " We were to form a copartnership and each share half and half,   *   *   *   and we were to divide the profits at the end of the job, or, if we felt like it, take the money and re-invest it in more land, which we did, and have been doing for the last thirty years.   I said to Mr. McCafferty, or Robert — he was my brother-in-law — ' Now what if any disagreement occurs between us ?   We ought to have

16

some distinct understanding what to do.' ' Well,' he says,
' we will sell everything and divide the money between us.'
*   *   *   We were to divide the profits in the transaction.
The principal subject we talked about was the disposition of
the partnership assets on a dissolution of the firm. What
was said about that was that if any dissolution of the partner-
ship should occur, or we had any disagreement, we should
sell all our holdings and divide the profits. As to what dispo-
sition should be made of the proceeds of lands sold in case of
loss, we were to divide the losses like we divided the profits."

This conversation occurred before and with reference to the
purchase of three or four pieces of real estate, but without
any other or different arrangement said persons thereafter con-
tinued to purchase, improve and sell real estate down to the
time of McCafferty's death in 1905, when the real estate in
question was on hand, except that the transactions of the
firm were not very active for two or three years prior to
McCafferty's death, on account of his ill-health.

It is conceded that the partnership was formed and con-
tinued for the purpose of dealing in real estate rather than of
holding it as an investment or as a means of carrying on any
other business, and that all the real estate purchased was sold
as rapidly as a suitable price could be obtained therefor.
During the continuance of the firm there was invested in the
purchase of lands the sum of $1,686,189 and in the improve-
ment thereof the sum of $2,232,903. No capital was con-
tributed by the partners, but their transactions were conducted
with profits or with moneys borrowed upon the property, the
proceeds being invested and re-invested as property was
marketed. Regular copartnership books were kept, upon
which was opened an account with each piece of property, the
final balance being debited or credited to a profit and loss
account according as there was a profit or loss upon the trans-
action. An account was also opened with each partner in
which he was debited with moneys drawn by him or paid out
on his account and credited with any payments on account of
the firm. At the end of each year an inventory was prepared

upon which was entered without discrimination a statement of the copartnership real estate and personal properties. The deeds of the real estate purchased ran sometimes to one of the partners and sometimes to both of them, but in the latter case contained no reference to the copartnership, and the habendum clause was in the ordinary form of that running to tenants in common.

In 1902 deeds were passed between the partners so as to invest each one upon the record with a half interest in each parcel of land then on hand, and which included some or all of those involved in this action. This was done at the suggestion of the deceased partner, who said "he wanted the interest divided and his half interest conveyed from him to Mr. Buckley and from Mr. Buckley to him when necessary, in order that each might have a half interest in each piece of property. * * * He said about his condition of health: 'I am in very poor health, indeed, and can't tell what will happen, and would like to have these titles straightened so that each will have a half interest on the records.'" No change was made upon the copartnership books to accompany or as the result of these transfers upon the record, but the real estate was carried thereafter as common copartnership property the same as before.

Mainly upon the evidence thus summarized the learned referee, manifestly after the most careful and thorough consideration, in substance found as matters of fact, amongst other things, that the oral agreement above referred to not only covered and applied to the four lots then purchased but was intended to and did cover and apply to all lots subsequently purchased; that such agreement and the conduct of the partners under it showed that it was their intention that all the real estate purchased and improved by them should be treated as personal property; that the real property belonging to said firm was always considered by the partners to be personal assets and was uniformly so treated in their mutual dealings with each other; that the agreement of copartnership provided that upon dissolution of the firm or in case of any

disagreement between the partners the real property then remaining on hand should be sold and the proceeds thereof divided between the partners.

These findings if sustained by any evidence are binding upon us and in connection with the other facts found lead to an affirmance of the conclusion that there has taken place a conversion of the real estate for all purposes.

The determination of the extent to which the theory of conversion into personalty of copartnership real estate will be carried in this state in a given case is made difficult by much contradiction of authorities and uncertainty. In England the general rule is that equity will regard such real estate as converted into personalty for all purposes. This rule is adopted by the courts of different states, including our own, so far as may be necessary to provide for payment of firm debts or the adjustment of partnership equities, but it has not been observed to the extent of treating such property as converted as a matter of course between the heirs and next of kin of a deceased partner. Upon that branch of the question there has been much variance in the decisions.

We think, however, that the great weight of authority in this country has established the primary and fundamental rule with which we may start, that even between such heir and personal representative a conversion will be regarded as having been worked when such was the intent of the partners either as evidenced by express agreement or fairly deducible from facts and circumstances. Thus Story on Partnership (sect. 93, sixth edition) says : " Indeed, so far as the partners and their creditors are concerned, real estate belonging to the partnership is in equity treated as mere personalty, and governed by the general doctrine of the latter. And so it will be deemed in equity to all other intents and purposes, if the partners themselves have, by their agreement or otherwise, properly impressed upon it the character of personalty."

And Shumaker on the Law of Partnership (2nd ed. chap. 145) says : " It is generally conceded in all jurisdictions that the question whether partnership real estate shall be deemed

absolutely converted into personalty for all purposes, or only converted *pro tanto* for the purpose of partnership equities, may be controlled by the express or implied agreement of the partners themselves, and that where, by such agreement, it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto." (See, also, Burdick on Partnership [2nd ed. 1906], page 110; *Darrow v. Calkins*, 154 N. Y. 503.)

And so we come to the precise query whether the evidence in this case authorized the referee to find within the rule above stated that it was the intent and understanding of the partners that their real estate should be treated as personalty for all purposes, and that they did thereby impress upon it the characteristics which will control even as between the heir and the personal representative. We think it did authorize him so to find.

The learned counsel for the appellants insists that the finding with reference to the oral agreement is somewhat broader than the agreement itself and that the latter did not provide for a sale of real property and distribution of proceeds in the event of the death of a partner. The agreement did provide for such course upon the dissolution of the copartnership and it might be said that the death of a partner which worked a dissolution came within the specific terms of the agreement. We do not, however, regard it as necessary to hold that the oral contract specifically provided for a conversion in case of a death, for whether it did do this or not we regard such agreement as significant as indicating a general purpose and expectation that the real property would be converted into personalty. The agreement was quite far reaching in its terms and even if it omitted to provide for some particular contingency. it is useful as indicating the general attitude of the partners towards their property with reference to the question now under discussion.

But we go beyond this parol agreement and regard as a much sounder and safer basis upon which in the main to predi-

cate our conclusions, the acts of the parties continued through a period of twenty-five years.

We agree that a conversion should not be adjudged as between the heirs and personal representatives except upon evidence clearly warranting such a determination and that it would be unsatisfactory and unsafe to base such a determination upon a mere oral agreement made many years before. We do not feel that we are at all indulging in any such dangerous course in this case. We look at the conceded acts of the parties. For a long period of years they purchased real estate for the sole purpose of improving and selling it. They had no intent permanently to hold it as an investment or as a means, like a warehouse, store or factory, of carrying on some other business. The only business which they had was that of dealing in the real estate itself as a man would deal in any other commodity of personal property. They contemplated its conversion into personalty as rapidly as possible in order that the proceeds of one piece might either be re invested in another or divided amongst the partners as profits. Their course of dealing necessarily involved treating the property as ordinary merchandise, and its regular and unfailing conversion. Their acts during all of these years entirely conformed to and were in accordance with the agreement said to have been made between them and as we think fully warrant the belief that they intended that the real estate at all times and for all purposes should be regarded and treated as personalty.

If we are correct in this view, we do not think that the character which they thus generally impressed upon the real estate in which they were dealing should be terminated and withdrawn from a piece of it happening to be undisposed of at the death of a partner, but that the character once impressed upon it should continue to prevail even as between heirs and representatives of such partner.

As already indicated, we are aware that decisions and dicta may be found opposed to our conclusions even upon facts somewhat similar to those here disclosed, and the learned counsel for the appellant with much care and discrimination

has called them to our attention. So far as the cases cited relate to instances where the real estate was held permanently for investment or as a means of carrying on some business or trade, we do not regard them as closely applicable, for it seems to us that there is a wide difference between such a case and one where the copartnership deals in real estate as merchandise.

It will not be possible within proper limits to review all of the other cases which may appear to be more akin to this one. We shall content ourselves with a brief reference to those arising in the courts of this state cited by the appellant's counsel in support of his contentions, it being very fairly conceded by him that none of those cases are entirely decisive of the question as now presented.

The cases of *Coster* v. *Clarke* (3 Edwards' Ch. 428); *Patterson* v. *Brewster* (4 Edwards' Ch. 352); *Delmonico* v. *Guillaume* (2 Sand. Ch. 366), and *Buchan* v. *Sumner* (2 Barb. Ch. 165), while each contained some discussion of the subject of conversion, either did not involve or did not pass upon the question as between heirs and personal representatives under circumstances at all similar to those presented here.

Especial reliance, however, is placed upon the cases of *Smith* v. *Jackson* (2 Edwards' Ch. 28) and *Buckley* v. *Buckley* (11 Barb. 43). The first case did involve the disposition of the proceeds of copartnership real estate, some of which had been bought upon speculation and entered upon the copartnership books as "merchandise." The question involved, however, was whether the proceeds of this copartnership property should pass to a trustee for copartnership debts or to the personal representatives of the deceased partner, and whatever was said about the respective rights of personal representatives and heirs of such deceased partner was beyond the necessary decision of the question actually presented.

In the latter case the question of conversion arose with reference to the proceeds of permanent copartnership real estate and fixtures used in the conduct of a regular business, and

while the opinion contains a most interesting and exhaustive review of the decisions, both in England and in this country, and reaches the conclusion that there was not a conversion in that case, for reasons already intimated it is not regarded as entirely applicable to the facts in this case. Moreover, this case enunciates a rule which is substantially in accordance with the one now being adopted, the opinion stating: " These cases leave no doubt as to the law in this state; and this is reasonable. It is clear that all (the matter of conversion as between personal representatives and heirs at law) depends upon the intention of the parties, and in the absence of any expressed intention to that effect, how can it be presumed that a man intends to convert real estate into personal and break the descent merely because a portion of the partnership funds are appropriated for the purchase of real estate ? "

The case of *Fairchild* v. *Fairchild* (64 N. Y. 471) was an action of partition, and although some observations were made upon the subject of conversion, no such question was involved.

Next we pass to a review of the authorities which, in our opinion, sustain the decision that the facts in this case warranted the finding of an intention upon the part of the partners for a general conversion.

Burdick on Partnership (2nd ed., page 111) says: " But effect ought to be given to the intention of the partners in whatever manner it may be disclosed. When real estate is purchased with firm funds and is treated by the partners as a part of the firm assets an agreement for conversion may well be inferred."

In *Morrill* v. *Colehour* (82 Ill. 618) land was purchased for the purpose of sale and acquisition of profits only, and not for permanent use. It was held that such property would be regarded in equity as personal property among the partners in the speculation, the court saying: " It was not bought to hold as land, but simply as an article of commerce, and for speculation, and for that reason equity regards it as personal property among the partners. In such cases the intention of the parties stamps the character of the transaction."

In *Lowe* v. *Lowe* (13 Bush's Kentucky Reports, 688) the court, after reference to the opinion of Story, that in the absence of an agreement for an absolute conversion into personalty of partnership real estate, the claims of the heir must prevail, says : " This seems to us to be the true doctrine, with this modification, that the agreement necessary to be shown may be either express or implied.  If express, of course, no difficulty can arise ; but if no agreement be expressed, then the court is to decide on all the facts whether the partners intended their real estate to be treated as part and parcel of their capital stock, not only for the purposes of the partnership, but for all purposes.  When such agreement or intention is shown from the nature of the partnership business, the character and extent of the real estate involved, and the partners' mode of treating and considering it, it should be held to be personalty, not only for partnership purposes, but for the purposes. of distribution also.  But in the absence of such facts and circumstances as will warrant the court in finding that it was intended or agreed by the partners that their real estate should be regarded as personalty for all purposes, it should only be so regarded for the purposes of the partnership."

In *Heirs of Ludlow* v. *Cooper's Devisees* (4 Ohio St. 1) a partnership was formed for the purpose of buying, improving and disposing of lots by donation and sale, the parties being equal partners in the property and under an agreement to contribute equally all payments and to share in the profits or proceeds arising from the sale of lands.  The court said : " The language of the agreement in this case is : ' The parties are to be equal in all payments toward the purchase money, as also in the profits or proceeds of the sale of said lands, or any part of them.'  Taking this whole agreement together, there can be little doubt but that the partners intended that this property should be sold as partnership property, and thereby converted, out and out, into personalty, and that either the surviving partner or the present representatives of the deceased partner, could, in a court of equity, have compelled a sale and division of the profits.  If so, it belonged, in equity, to the

administrators of Ludlow (one of the partners) and not to his heirs."

In *Rammelsberg* v. *Mitchell and Lape* (29 Ohio St. 22) it is said : " There is no doubt that if, by the terms of the partnership articles, real estate be purchased with partnership funds, or be put otherwise into the partnership stock, to be used and held solely for partnership purposes, it is to be regarded as converted out and out into personalty, so that the heir at law takes no beneficial interest therein in any event, but the proceeds not needed for partnership purposes pass to the personal representatives of the copartners.   *   *   * We see no good reason for holding that an agreement in writing is necessary for such conversion.   Undoubtedly the intention to convert out and out should be made to appear clearly ; but such intention may be inferred from circumstances with sufficient clearness.   *   *   *   We are of opinion that such conversion is sufficiently shown where real estate is purchased for partnership purposes, paid for with partnership means, and used solely for the conducting of the partnership business."

In *Gilbraith* v. *Gedge* (16 B. Monroe's Rept. 631) it is said : " The views expressed in the foregoing opinion are to be confined, of course, to the facts as they appear in the record. In regard to the character in which the land is held, it only appears that the partners are 'tobacconist merchants, and trading and dealing in real estate,' and that the land was purchased with the money of the firm.   These facts alone do not, in our opinion, authorize the conclusion that the partners had impressed upon the land the character of personal estate, and that they intended it to be used and disposed of as such.   It does not appear that it was purchased to be used for partnership purposes, and to be employed and disposed of as personal property.   If real estate be purchased by partners with partnership means, for partnership purposes ; that is, be so purchased to be used, dealt with and disposed of as personalty, it should, for commercial convenience, partake of the character which the partners have thus impressed upon it, and, upon

the dissolution of the partnership by the death of one of the partners, the interest of the deceased partner ought to belong, as personalty, to the executor or administrator, and not descend to the heir, and should be treated in all respects as personal estate. But, as already said, we do not think that the facts in this record are sufficient to authorize the conclusion that the partners had impressed upon the land in contest the character of personalty." (See, also, *Hughes* v. *Allen*, 66 Vt. 95; *Lenow* v. *Fones*, 48 Ark. 557.)

Three cases decided by the courts of this state merit attention, two of them pre-eminently so.

*Collumb* v. *Read* (24 N. Y. 505) involved consideration of the question whether copartnership real estate was to be regarded as converted into personalty, and in the course of his opinion Judge DENIO stated: "Where land is conveyed to two or more persons by a common deed of conveyance they become tenants in common, and each is at law considered separately seized of his individual share as fully as though they derived title under separate conveyances from different sources. But if the tenants in common are at the same time copartners and the land was purchased with partnership funds, and for partnership purposes, it is deemed in equity converted into personal property, and is liable to be administered as such in winding up the affairs of the firm; and it goes, moreover, to the personal representative, and not to the heirs of a deceased partner." It must be admitted, however, that the question of conversion as between heirs and personal representatives was not involved in this case, and that, therefore, what was said upon that subject must be regarded as expressive of the views of the learned judge writing the opinion rather than of the court.

The case of *Darrow* v. *Calkins* (154 N. Y. 503) involved the question whether the title to an undivided half interest of lands conveyed by deed running jointly to two partners descended to and vested in the heirs of one of them, and there was no question that the real estate was copartnership property. While the court decided the case upon another point, and did

not finally pass upon the question whether there had been a conversion of the realty as between the heirs and personal representatives, that question did receive consideration which was so pertinent that what was said can scarcely be regarded as mere dictum. The learned Chief Judge ANDREWS said : " It is, however, generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted *pro tanto* for the purpose of partnership equities, may be controlled by the express or implied agreement of the parties themselves, and that where by such agreement it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto. In respect to real estate purchased for partnership purposes with partnership funds and used in the prosecution of the partnership business, the English rule of " out and out " conversion may be regarded as properly applied on the ground of intention, even in jurisdictions which have not adopted that rule as applied to partnership real estate acquired under different circumstances and where no specific intention appeared. The investment of partnership funds in lands and chattels for the purpose of partnership business, the fact that the two species of property are in most cases of this kind so commingled that they cannot be separated without impairing the value of each, has been deemed to justify the inference that, under such circumstances, the lands as well as the chattels were intended by the partners to constitute a part of the partnership stock and that both together should take the character of personalty for all purposes, and Judge DENIO, in *Collumb* v. *Read* (*supra*), expressed the opinion that to this extent the English rule of conversion prevailed here. That paramount consideration should be given to the intention of the parties when ascertained, is conceded by most of the cases."

*Barney* v. *Pike* (94 App. Div. 199) was a case where four parties entered into an oral partnership agreement which provided that the partnership·capital should be furnished by the parties in certain prescribed proportions, and " that the capital

thus contributed should be invested in the purchase of marsh lands to be reclaimed and sold and converted into money, and the proceeds and profits or losses should be divided among said partners in proportion to their several interests therein, such sales and distribution to be made as soon as the lands were reclaimed or on the dissolution of the partnership"; also that the title to the partnership lands should be taken in the name of one of the partners. The question was directly presented whether the interest of a deceased partner in the lands was to be regarded as real or personal estate, and it was held that under the agreement in question there was an equitable conversion of the lands into personal property for all purposes, including the transmission of the interest of a deceased partner to his personal representatives instead of the heirs.

We think that these authorities and sound reason justify the conclusion that where a partnership formed for that purpose has carried on the business of dealing in real estate as a commodity, buying it absolutely for the purpose of improving and selling it and either dividing the proceeds of the sale amongst the partners or reinvesting it in more real estate to be similarly dealt with, carrying it upon the firm books indiscriminately with personal property as part of the assets of the firm, and this course of conduct is in accordance with and confirmatory of an oral agreement for a copartnership and for a conversion of the real estate into personalty upon dissolution of the firm or disagreement of the partners, a trial court is justified in finding, as a matter of fact, an implied intention and agreement upon the part of the copartners that there shall be a conversion of their real estate into personalty for all purposes, and that such intention and agreement will apply to real estate happening to be undisposed of at the death of one of the copartners upon a distribution of his estate as between his heirs at law and personal representatives.

We do not regard as well founded the suggestion that the theory of conversion is in conflict with the statutory provision (Real Property Law, L. 1896, ch. 547, sec. 207) that " An estate or interest in real property,   *   *   *   or any trust or

power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same."

It is sufficiently well settled that a copartnership for dealing in real estate may be created by parol. (*Chester* v. *Dickerson,* 54 N. Y. 1; *Fairchild* v. *Fairchild,* 64 N. Y. 471; *Williams* v. *Gillies,* 75 N. Y. 197.)

The question whether the interest of a partner in such real estate shall for purposes of distribution be treated as realty or personalty is incidental to the relation of copartnership. Its disposition is governed by express agreement or that implied from the acts of the copartners, and in our opinion the finding of an intention for a conversion does not conflict either with the spirit or the letter of the statute referred to.

But finally it is earnestly urged that even if the general facts and circumstances attending the formation and conduct of this copartnership would authorize the finding of an intent and agreement for conversion, such facts, circumstances and finding must yield to and are prohibited by special considerations, reference being made to the deeds passed between the copartners shortly before the death of McCafferty, and it being urged that these transfers conclusively indicate an intent to regard the real estate as such and not otherwise. Probably such effect might have been given by the trial court to those acts. Upon the other hand, we think other inferences were deducible therefrom. Mr. McCafferty was contemplating death and it was not unnatural that, as expressly stated by him, he should desire that the record title of the real estate still on hand should conform to the actual and equitable interests of the respective partners. As a layman he might imagine more possibilities than really existed of complications resulting from a lodgment of titles not in accordance with the real interests of himself and his copartner. This idea might furnish the motive for what was done rather than any thought of influencing the disposition and

distribution of his partnership interests in the event of death. No change was made upon the partnership books whereby the real estate was charged up to the respective partners in accordance with the deeds which were executed or in any manner withdrawn from the copartnership agreement and arrangements as they had always existed.

In his disposition of the case the learned referee has seen fit to adopt this latter line of inferences rather than the other one, and has made findings of fact upon the subject which we think were authorized and which, therefore, are controlling upon us.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN and WILLARD BARTLETT, JJ., concur; HAIGHT and WERNER, JJ., dissent.

Judgment affirmed.