### In re LAMON.

(District Court, N. D. New York. July 15, 1909.)

1. PARTNERSHIP (§ 22*)—CREATION—PAROL.

While a partnership to deal in real estate may be created by parol, there must be an agreement, express or implied, from the acts done and the mode and manner of conducting the business, showing the relation with regard to the transaction in question.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 22.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PARTNERSHIP (§ 52\*)—REAL ESTATE—DIVISION OF INCOME.

That one person, having the title to real estate in his name, passed a part of the income or profits to another, does not establish a partnership relation between them.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 75; Dec. Dig. § 52.\*]

3. BANKRUPTCY (§ 340\*)—CLAIMS.

On a claim against a bankrupt on an alleged indorsement of the note of a prior associate in business, which indorsement the bankrupt claimed was forged and unauthorized, evidence *held* to sustain a finding that the money was not borrowed for the purposes of a partnership, of which the bankrupt was claimed to be a member, nor used for the purposes of such alleged firm.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.\*]

4. BANKRUPTCY (§ 316\*)—CLAIMS—FORGED INDORSEMENT.

Where a bankrupt had nothing to do with a note discounted by a bank bearing his false indorsement, and the evidence did not show that the bankrupt ever received any benefit from the discount, except that $500 of the amount was used by the maker to reduce a note at another bank on which the bankrupt was liable as indorser, the note was not a valid claim against the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.\*]

In Bankruptcy. Review of orders of referee disallowing and expunging claim of Mason M. Swan, for about $2,070, and claim of First National Bank of Baldwinsville, N. Y., for $1,000, and interest from July 18, 1907.

J. H. O'Brien, for trustee.
W. A. Nims, for claimant bank.
Field & Swan, for claimant Swan.

RAY, District Judge. As the questions of law involved are substantially the same as to each claim, they may be appropriately considered together, although there is no connection between the claimants.

### Swan Claim.

November 14, 1906, the claimant, Mason M. Swan, loaned to H. G. Beach the sum of $2,500, taking his promissory note, purporting to be indorsed by Francis M. Lamon, the bankrupt. Lamon denies that he indorsed the note, or authorized his name to be indorsed or written thereon, and Beach, in prison, declines to say whether the signature of Lamon, indorsed thereon, is genuine or was authorized, on the ground his answer would incriminate him. No proof was given of the genuineness of the indorsement. But the claimant says that Beach and Lamon were in partnership, and that the money was borrowed for and used in the partnership business, to pay a debt for money borrowed to purchase or pay for partnership real estate, and that therefore Lamon is liable for the debt, irrespective of the genuineness of the indorsement. There is no claim that Beach purported to borrow the money for the partner-

ship, if one existed, or that Swan understood he was loaning the money to the partnership. It was a loan to Beach on his note, purporting to be indorsed by Lamon, who was a large owner of real estate, and the loan was made by Swan, relying on the financial responsibility of Lamon, the indorser. Swan says:

"I can't recall that Beach told me what he intended to use the money for that he obtained from me. * * * I had known Mr. Lamon 10 or 15 years, knew that he was a large owner of real estate, and knew he owned property in Sterling street and in Court street. I made the loan entirely upon the financial responsibility of Lamon."

It cannot be successfully claimed under the evidence that Beach and Lamon were general partners, or partners in any commercial business. They were partners in at least one real estate speculation. A property in Brooklyn, N. Y., known as the "Amity Street Property" was held by them as a joint venture or speculation, and sold, and the proceeds, over and above the incumbrances, put into an apartment house in New York; the title being taken by Beach in his own name. The Brooklyn property was purchased in 1903; but the title to this was taken in the name of Lamon, and same was paid for in part by the proceeds of a note discounted at the Jefferson County National Bank, of Watertown, N. Y., where the parties resided, and which note was made by Beach and indorsed by Lamon. This Amity property was sold in 1905, and the New York property purchased. When the Brooklyn property was purchased, a blank account was opened at the Jefferson County National Bank in the name of Lamon & Beach. While this account has never been finally closed, it has been dormant for years, with a very small balance to their credit. It appears that the rents, etc., of the Amity went into this account.

This New York city property was known as the "Awosting." The evidence tends to show that the money borrowed of Swan was used by Beach to pay notes given for the purchase of the Amity property, made by Beach and indorsed by Lamon. The facts that Beach and Lamon were jointly interested in the original purchase, that Beach borrowed money to put into the property, and that Lamon indorsed, does not make that debt a partnership debt, nor does it make Lamon liable as a partner. If he indorsed, he would be liable as indorser as a matter of course. Beach could borrow money on his own credit and put it into the partnership account and fund without making the debt a partnership liability. Two or more persons may enter into partnership. Each may borrow money on his own credit and responsibility to put into the business as his share of capital, and put it into the business, and give a note; but this does not make the debt a partnership debt or obligation, or make the other partners liable therefor. I think the evidence fails to establish that there was any partnership between Beach and Lamon after the sale of the Brooklyn property. Beach did some business in New York under the name of Beach & Co.; but the evidence fails to disclose that Lamon had any part in it, or that he assented to it, or that he knew he was being treated as a partner, or a member of any company. The testimony of Beach is to the effect that

there was in fact no company; that he used the name Beach & Co. as a matter of convenience, and to give himself a better or more extended credit. It is settled that a partnership for dealing in real estate may be created by parol. Buckley v. Doig, 188 N. Y. 238, 254, 80 N. E. 913; Chester v. Dickerson, 54 N. Y. 1, 13 Am. Rep. 550; Fairchild v. Fairchild, 64 N. Y. 471; Williams v. Gillies, 75 N. Y. 197. But to constitute a partnership there must be an agreement, express or implied, showing the relation with regard to the transaction in question. It may be implied from acts done, the mode and manner of conducting a business (Manson v. Williams, 213 U. S. 453, 29 Sup. Ct. 519, 53 L. Ed. ——, May 3, 1909); but the fact that the person having the title in his name pays some part of the income or profits to another does not establish the relation.

The claimant places stress upon the case of Ontario Bank v. Hennessey, 48 N. Y. 545, as establishing this claim in his favor. That case was decided by the Commission of Appeals in 1872, but was distinguished, and its effect as an authority questioned, by the Court of Appeals in Williams v. Gillies, 75 N. Y. 197, 203. It was there held:

"As to whether a parol agreement between two or more persons to purchase a specific parcel of real estate with a view of selling at a profit, to pay for the same from their individual means, and to take the deed in the name of one of them, constitutes a partnership in any commercial sense, and so is not violative of the statute of frauds, quære. Conceding a partnership in some sense, it does not follow that all the incidents and liabilities of a commercial partnership attach. Where, in such case, the party taking title gives back his individual bond for a part of the purchase money, the name of his associates not appearing in the bond and nothing therein indicating that it was executed on their behalf or for their benefit, they cannot be held personally liable thereon."

Beach told Lamon he had deeded the New York property to him. Lamon supposed he had, and acted accordingly. No deed to Lamon was received or delivered. In June, 1907, Lamon and wife gave to Beach a power of attorney to sell the New York property, the Awosting. July 1, 1907, Beach, acting under said power of attorney, contracted in writing to sell such property to one Enistein. This is inconsistent with a partnership as to such property. Beach makes a general statement that he and Lamon were interested in various real estate projects or transactions. This is denied by Lamon. It is undisputed that Lamon indorsed a large number of notes for Beach. Lamon kept an account of these indorsements, which, in the list, run from February, 1900, to July 6, 1907. Of course, all or much of this money could have been borrowed for partnership transactions; they concealing the relation, and one making the note and the other indorsing, so as not to go outside for indorsers. But there is no satisfactory evidence that the business was done in this way. On all the evidence I think a finding that this money was borrowed for partnership purposes, or used for partnership purposes, would be based on mere conjecture, and not on evidence that satisfies the mind. The order of the referee disallowing this claim is therefore affirmed.

### Bank Claim.

About February 18, '1907, the First National Bank of Baldwinsville, the claimant herein, loaned to Beach $1,000 on his promissory note, purporting to bear the indorsement of Lamon, the bankrupt. Lamon did not indorse the note or authorize it. At that time Beach and Lamon were not partners. May 18, 1907, Beach renewed the note, forging Lamon's name thereon as indorser. July 18, 1907, Beach renewed the note, forging the name of Lamon to the renewal. Lamon had nothing to do with the making of this note. In describing the Swan claim I have stated quite fully the partnership relations of Beach and Lamon.

Prior to the 18th day of February, 1907, Beach had made a note, indorsed by Lamon, which was held by the Commercial National Bank of Syracuse. Lamon had insisted that Beach pay at least $500 on that note held by the Commercial National Bank at each renewal and of the money received of the claimant bank Beach paid $500 on the note held by the Commercial National Bank. This reduced the liability of Lamon as indorser; but the money obtained from the Commercial National Bank by Beach on the note referred to was not used for partnership purposes. Conceding that Beach used the money in a real estate transaction in Canada in which Lamon was in some way interested, there is no evidence to establish that Beach and Lamon were copartners in that Canada transaction. The referee has failed to so find, and I think the evidence falls far short of establishing a partnership in that deal. It follows, I think, that there is no evidence that the money obtained from the Baldwinsville Bank was used for partnership purposes. I am unable to ascertain from the evidence what disposition was made of the other $500 obtained from the Baldwinsville bank. There is no satisfactory evidence that Lamon had it, or the benefit of it, directly or indirectly. It would be a violent assumption to find that Lamon ever received any benefit from the loan made at the Baldwinsville bank, other than that $500, was used by Beach to reduce a note at the Syracuse Bank upon which Lamon was liable as indorser.

I think the referee was right in rejecting the claim, and his order disallowing same is therefore affirmed.