(160 App. Div. 294)

BOGARDUS v. REED et al.

(Supreme Court, Appellate Division, Third Department.   January 21, 1914.)

1. PARTNERSHIP (§ 5*)—THE RELATION.

Persons, owning as heirs, devisees, and legatees a ferryboat, and the ferry docks and the lands on which they are built, having suffered the ferry business, conducted by their ancestors and testators, to continue, each receiving his share of the profits from year to year, a partnership relation exists between them.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 15, 16; Dec. Dig. § 5.*]

2. PARTNERSHIP (§ 313*) — DISSOLUTION — SALE OF PROPERTY — PARTITION OF REAL ESTATE.

Partners in a ferry business together owning the franchise, boat, and lands with the docks thereon, an action by one of them for partition of the land should proceed as one for dissolution of the partnership and sale of its assets in connection with the sale of the land, even if the land has not become partnership property, and therefore personalty; as a separate sale of the land would probably impair, if not destroy, the value of the franchise and boat.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 679, 729, 729½; Dec. Dig. § 313.*]

Kellogg, J., dissenting.

Appeal from Special Term, Greene County.

Action by Mary Adalaide Bogardus against Stewart R. Reed and others.   From a judgment of partition, defendants appeal.   Reversed, with directions.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

N. A. Calkins, of Coxsackie, for appellants.
Curtis & Warren, of Coxsackie, for respondent.

SMITH, P. J.   [1, 2]  The property by this judgment partitioned was originally owned by three parties, Hamilton, Smith, and O'Connor, who also owned a ferryboat, crossing the Hudson river.   This property consists of the docks at which this ferry lands upon the two sides of the river, and appurtenant land.   The parties above named have all died, and their interests in the lands and ferryboat have passed to the heirs and devisees or legatees, who have all suffered the business to continue, each receiving his share of the profits from year to year.   That this constitutes a partnership cannot be doubted.   This land has always been used in connection with this business.   By chapter 178 of

the Laws of 1886 the original owners procured a license from the state to operate this ferry. Without such a license the operation of a ferry is a misdemeanor. Penal Law, § 870 (Consol. Laws, c. 40). A license to operate the ferry can only be obtained by one who owns property through which the highway runs approaching the ferry. Highway Law, § 270 (Consol. Laws, c. 25). While the proof is not as full as might be desired, it is a fair inference, from the fact that this property has on it the docks for the landing of the ferryboats, and has always been used in connection therewith, that the property is mainly valuable for ferry purposes, and this fact is so found by the referee. In Darrow v. Calkins, 154 N. Y. 516, 49 N. E. 64, 48 L. R. A. 299, 61 Am. St. Rep. 637, in discussing whether real estate used in connection with a partnership becomes partnership assets, Judge Andrews says:

"The investment of partnership funds in lands and chattels for the purpose of a partnership business, the fact that the two species of property are, in most cases of this kind, *so commingled that they cannot be separated without impairing the value of each,* has been deemed to justify the inference that under such circumstances the lands, as well as the chattels, were intended by the parties to constitute part of the partnership stock."

In MacFarlane v. MacFarlane, 82 Hun, 238, 31 N. Y. Supp. 272, it is held:

"The mere fact of the bequest by will, to two persons, of certain real estate, and of the business transacted by the testator thereon, does not constitute such persons partners; it merely makes them joint owners; but their election to continue the business, each contributing thereto his share of the property bequeathed to him, renders the relation between them that of copartners, and the property copartnership property."

It is not necessary, however, here to hold that this real estate has become copartnership property, and therefore personalty. This property has passed by deed and will to many divers persons, all of whom have elected to jointly continue this ferry business under this license granted by the state, and all of whom have an interest in the ferryboat and license equal to that of their interest in the land. A sale of the real estate without the franchise and the boat would probably and naturally largely impair the value of the franchise and the boat. If sold together, the joint interests would naturally bring a much larger sum. The real estate and franchise and boat should be offered for sale separately and jointly, on the principle of an upset sale, in which case the owners would obtain the greatest value that could be obtained for all of the property. These facts seem to me to justify the court in directing such a sale, and in refusing to decree that the real estate may be sold separately, thereby impairing, if not destroying, the value of the franchise and of the ferryboat.

The judgment should therefore be reversed, and a new trial granted, and the action proceed as for a dissolution of the partnership and sale of its assets in connection with the sale of this land.

Judgment is reversed in law and fact, and the action is directed to proceed as for a partnership accounting. Upon the final sale the real estate shall be offered for sale separately, and the boat and franchise under which the business is conducted. Thereafter both the real estate and the boat and franchise shall be offered together, upon the principle.

of an upset sale. The fourteenth finding of fact is reversed, and this court finds that the original parties and their successors have continued to the present time to run such ferry as copartners, and that said real estate, or the use thereof, has, at all times, been contributed to such copartnership by the owners thereof for copartnership purposes, and that a sale of said real estate apart from the ferry and franchise will be detrimental to the interests of the various owners, and that the offering for sale of the land and ferry and franchise separately and together, upon the principle of an upset sale, will be of material advantage to the owners thereof. All concur, except KELLOGG, J., dissenting in memorandum.

JOHN M. KELLOGG, J. (dissenting). In 1863 the dock property on one side of the river was conveyed to three men as tenants in common. In 1864 the dock property on the other side was conveyed to them. It does not appear that up to that time there was any copartnership or copartnership property. Soon after, it does not definitely appear when, they began to run a ferryboat between the docks, and in 1888 they obtained a charter to run a ferry at that place. They are all dead, and there is no evidence as to the agreement, the purchase of the property or the boat, except as it is inferred from the fact that the deed is in their names, and that they conducted the ferry and divided the net proceeds of the ferry business.

The complaint alleges that the plaintiff is the owner of an undivided one-sixth interest in the dock property, and asks a partition. The answer denies the ownership, and alleges, in substance, that the ferry business, including the dock property, boat, and franchise, belongs to a copartnership in which the plaintiff owns a one-sixth interest. It does not appear that there are any debts against the copartnership, or that the rights of the copartners as between themselves are such that a resort to the real estate may possibly be necessary in adjusting their respective interests. The question decided was purely one of law as to where the title to the docks is, and whether the plaintiff has such an interest therein that she can maintain partition.

It is evident that a partnership existed in operating the ferry. It is also clear that at the time the deeds were given they vested title in the three men as tenants in common. The mere fact that the real estate was used in connection with the ferry does not deprive them of their rights as tenants in common, or convert their real estate into personal property, or merge its ownership with the firm assets. The English rule resulted from the law of primogeniture, and from the rule that real estate is only liable for debts created by specialty; by it all partnership real estate is out and out converted into personal property, and the heirs of the partners as such have no interest therein. By the American rule the property does not lose its character as real estate, except so far as it is necessary to protect the partnership creditors and to adjust the equities between the partners themselves. Mr. Reeves, in his Real Property (volume 2, § 695) says:

"The creditors have the first right in the property, whether it is treated as personalty or as a trust fund held for them; and, after they are satisfied, the

firm members own the residue as tenants in common, with all the incidents of that form of concurrent ownership."

Where property stands in the name of the partners, the mere fact that it is used in the partnership business does not alone deprive it of its character as real property, or prevent its descending to the heir, subject of course, however, to the rights of creditors. Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637; Gerard's Title to Real Estate (5th Ed.) pp. 528, 529; 30 Cyc. 184, 185. And such property may be partitioned. Levine v. Goldsmith, 83 App. Div. 399, 82 N. Y. Supp. 299; Schleissner v. Goldsticker, 135 App. Div. 435, 120 N. Y. Supp. 333.

Where a partnership was formed for the purpose of dealing in real estate, and the agreement of copartnership provided that in case of dissolution the holdings should be sold and the proceeds divided, it was held that the agreement showed an intent that the ordinary rule should not apply, but clearly indicated an intent to treat all the real estate as personal property, and that therefore it passed to the personal representatives and not to the heir. Buckley v. Doig, 188 N. Y. 238, 80 N. E. 913, 11 Ann. Cas. 263.

The prevailing opinion holds, as I understand it, that the heir of a partner cannot maintain partition if the property stands in the name of the original partners as tenants in common, but was used and was necessary for the use of the firm, relying upon MacFarlane v. MacFarlane, 82 Hun, 238, 31 N. Y. Supp. 272. So far as that case purports to be an authority to that extent, it has been overruled by the recent decisions cited. There were, however, in that case the facts that the testator devised his "house and property, No. 24 Norton street, with all the implements, mechanism, and fixtures and interests connected with and in the dyeing and scouring business" to his two sons, with an annuity to his wife, which was payable from the rents of real estate, but if such rents were not sufficient the remainder was to be paid by the sons from the proceeds of the dyeing and scouring business. The brothers carried on the business for some years, when the defendant turned it over to the plaintiff, with the understanding that the plaintiff was to have the sole management of it, and was to have two-thirds of the profits and the defendant one-third. It was held that the plaintiff, under the circumstances, could not maintain partition. Perhaps the fact that the payment of the annuity to the mother was charged upon the business, and that the plaintiff had acquired the sole control of the property under the agreement, may have had an important bearing in the decision of the case. The term during which the plaintiff was to control the property does not appear, and perhaps it might be inferred that one of the objects of the agreement was to take care of the annuity to the mother.

During the pendency of the action, by death and transfers, various changes have taken place with reference to the parties interested in the real estate. Now a lunatic and an infant each owns an undivided interest. Each of those changes would bring about a dissolution of the partnership unless the old and new interests agreed to continue it. In the absence of an express agreement, one might be implied by the

act of the parties. No act upon the part of the plaintiff is shown which would amount to an agreement upon her part to continue the partnership. During all the while, apparently, she has been doing what she could to terminate it. In the year 1906 no dividends were realized from the business; this action was brought January 15, 1907; there is nothing to show that any one will suffer if the partnership is not continued.

Undoubtedly, as this real estate has been used in connection with the partnership business, and in a way may be necessary thereto, the court might require, if facts are shown making it clear that the interests of all otherwise will suffer, that the personal property be sold with the real estate. But the defendants have not asked any such relief or shown any such facts. They took the broad position upon the trial, and here, that the plaintiff has not such an interest in the real estate as entitles her to maintain the action. The value of the business, the franchise, or the boat does not appear. It is alleged, without denial, that the real estate is worth $14,000. We cannot say but the real estate is the only thing of real value connected with the business. Perhaps every one will receive more if the real estate is sold separately from the boat and the franchise. The dock property may be more valuable for other purposes than for use in connection with the ferry; the ferry boat may be more valuable for other uses; there is an entire absence of proof upon these subjects. The intendments are all in favor of the judgment, and the court should not assume facts not proven for the purpose of reversal. We are forcing upon the defendants a relief they do not ask. They have elected to stand upon the broad proposition that the plaintiff is not a tenant in common of the real estate, and judgment properly passed against them upon the only question litigated. I favor an affirmance.